# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

STEVEN E. THOMPSON,
      **Plaintiff,**

                                    **Civil Action 2:16-cv-546**
    **v.**                                **Chief Judge Edmund A. Sargus**
                                    **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Steven Thompson, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply in Support (ECF No. 17), and the administrative record. (ECF No. 9.) For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's nondisability finding.

## I.    BACKGROUND

Plaintiff filed his application for benefits on February 19, 2013, alleging that he had been disabled since August 8, 2011. (R. at 83–84, 146.) Plaintiff's application was denied initially on

June 26, 2013, and upon reconsideration on November 26, 2013. (R. at 83–84.) Thereafter, Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 103.)

Administrative Law Judge Irma Flottman ("ALJ") held a hearing on June 23, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 35–60.) Vocational Expert Jerry Oshesky also appeared and testified. (R. at 60–63.) On July 31, 2015, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. (R. at 23–34.) On April 21, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified that for the last year he has lived on his own in an apartment, which he received through a program called Plus Care. (R. at 46.) He testified that prior to living in the apartment he was homeless and living in shelters or with friends. (R. at 46, 48.) According to Plaintiff, he has never had a driver's license and he "thinks" he last worked in 1984.[1] (R. at 47.) He takes the bus to get to his doctors' appointments and anywhere else he needs to go. (R. at 53.) He is able to walk to the grocery store, which he does on the fifth of each month to buy groceries. (R. at 54.) He testified that he cleans his apartment on a regular basis and does laundry every two weeks. (*Id.*) He has an adult son with whom he has a relationship. (*Id.*) He reported that he attends Church twice a month, on Wednesdays, when it is less crowded. (R. at

---

[1] In response to the question "[a]re you currently working?" in his application for benefits, Plaintiff wrote "[n]o, I have never worked." (R. at 164.) Both parties similarly discuss his work history as nonexistent throughout their briefing and the ALJ's decision.

55.)  When asked if he has tried to work, he responded that he had not.  (*Id.*)  Previously, to make money Plaintiff testified that he was selling drugs.  (R. at 48.)

He further testified that he applied for disability because he is "having a lot of problems with people, being around people."  He explained, "[i]t's hard for me to get through a day, just an ordinary day.  When the end of the day comes, I just want to lay down and rest because it's that hard for me to get through a day."  (R. at 49.) He currently receives mental health treatment from South East Mental Health.  (*Id.*)  He testified that he is being treated for psychosis, described that he hears voices, is suicidal, has difficulty concentrating, feels frustrated and aggravated easily.  (R. at 51.)  Through his treatment he takes medicine, which he said helps him, although the problems do not stop.  He testified, "I'm a little better with the medicine than without it.  It's real bad without the medicine."  (R. at 51.)  He has been treated for alcohol and drug abuse, which he testified he has not used since January 2013.  (R. at 51.)

## B.      Vocational Expert's Testimony

The vocational expert ("VE") testified that based on Plaintiff's age, education, lack of work experience, and residual functional capacity, a similarly situated hypothetical individual could perform work as a "hand packer", with 3,500 jobs locally and 300,000 nationally; as a "cleaner", with 11,000 jobs locally and 1.5 million jobs nationally; or as a "packing and filing machine tender", with 1,500 jobs locally and 200,000 nationally.  (R. at 62.)  When asked if the added limitation "of only occasional changes in the work settings, with any changes explained, and demonstrated, and changed to no interaction with the public" would change the available jobs, the VE testified that the before named jobs would still be viable.  (*Id.*)

### III.     MEDICAL RECORDS

**A.  Treatment Facilities**

**1.  Twin Valley Psychiatric, Netcare**

On January 30, 2013, Plaintiff was admitted into Twin Valley Psychiatric, Netcare because he was suicidal.  (R. at 233.)  He received inpatient treatment for thirteen days.  (R. at 230.)  His discharge narrative summary reports that he "claims he hears voices . . . but does not appear to be attending to any and does not try to act out when he talk[s] to me" and that he "usually chooses to do that in front of the staff who [are] not familiar with him."  (R. at 232.)  Such skepticism with Plaintiff's claims of hallucinations appears throughout his treatment records at Netcare.  (R. at 239, 247 ("Pt. stated he was hearing the voices . . . even during our interview, though I found no objective evidence of the subjective report."), 249.)  He claimed he killed his girlfriend and her one-year-old child multiple times during his Netcare assessment.  (R. at 232–33.)  He reportedly made those claims in order to get into a mental health hospital.  (R. at 233.)  Over the course of hospitalization he "stabilized well on medications."  (*Id.*)  Plaintiff, who was homeless prior to his hospitalization with Netcare, was found housing prior to discharge.  (R. at 234.)

**2.  South East Mental Health**

Plaintiff began receiving mental health care from Southeast on February 4, 2013.  (R. at 263.)  During his initial visit he was diagnosed with polysubstance abuse, malingering, dysthymic disorder, cocaine induced mood disorder, and alcoholism.  (R. at 265.)  The notes report that his "[a]ttention is maintained, reasoning is good, judgment is poor, thought processes are logical."[2]  (R. at 266.)  Notes from a November 23, 2013, appointment reflect that Plaintiff

---

[2] At this appointment, Plaintiff's GAF score was 49.  (R. at 266.)

did not exhibit signs of psychosis or mania during his visit.  (R. at 340.)  During May and August 2013 appointments, Plaintiff's treatment notes show that he was exhibiting signs of psychosis but no mania. (R. at 344, 349.)

## B.  Examining consultative physicians

### 1.  Dr. Steven Meyer

In June 2013, Dr. Meyer examined and evaluated Plaintiff at the request of the Ohio Division of Disability Determination.  (R. at 267–72.)  He diagnosed Plaintiff with a schizoaffective disorder, a personality disorder, and polysubstance abuse.[3]  At the time of the examination, Plaintiff reported that he was homeless and staying at a shelter.  (R. at 268.)  Dr. Meyer observed Plaintiff "had an odor and his hand and nails were visibly dirty."  (R. at 269.)  Plaintiff was able to make change during the evaluation, but reported to Dr. Meyer that he was unable to budget money.  (R. at 269.)  Dr. Meyer wrote that Plaintiff's speech was "intelligible" and noted that there was "no apparent flight of ideas, perseveration, or poverty of speech."  (R. at 269.)

Dr. Meyer reported that Plaintiff did not manifest any obvious signs of anxiety, that Plaintiff denied experiencing panic attacks, but reported experiencing anxiety "[a]ll the time." (R. at 270.)  Dr. Meyer opined that Plaintiff is "able to perform simple and moderately complex routine work with oral/hands-on training with supervision if needed."  (R. at 271.)  He further opined that Plaintiff can perform in a work setting that does not have strict production requirements, with assistance "at times of performing new tasks."  Finally, the work setting must be nonpublic and only include at most intermittent or occasional interactions with supervisors and some coworkers.  (R. at 271.)

---

[3] Dr. Meyer also accorded Plaintiff a GAF score of 53. (R. at 270.)

## 2. Dr. Roxane Lewis

On July 7, 2014, Plaintiff was examined by Dr. Lewis, at the request of Ohio Jobs and Family Services to determine eligibility for State of Ohio Disability Assistance benefits. (R. at 388–93.) Dr. Lewis diagnosed Plaintiff with schizoaffective disorder and borderline intellectual functioning. (R. at 393.) Plaintiff reported that he does all of his household chores including cooking, laundry, grocery shopping, and paying the bills. (R. at 392.) Dr. Lewis opined that Plaintiff had moderate limitations with understanding, remembering, and carrying out instructions, and marked limitations in other mental functions such as carrying out short and simple instructions, making simple work-related decisions, and the ability to sustain an ordinary routine without special supervision. (R. at 394.) She summarized the abnormalities she found in the exam as including psychosis and a mood disorder. (R. at 392.)

## IV. ADMINISTRATIVE DECISION

On July 31, 2015, the ALJ issued her decision. (R. at 23–34.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

gainful activity since February 19, 2013, the alleged onset date of the disability.  (R. at 25.)  The

ALJ found Plaintiff had the severe impairments of schizoaffective disorder, personality disorder,

anxiety disorder, an affective disorder, and polysubstance dependence.  (*Id.*)

The ALJ further found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  (R. at 27.)  At step four of the sequential process, the ALJ set

forth Plaintiff's residual functional capacity ("RFC") as follows:

> The claimant has the residual functional capacity to perform a full range of work
> at all exertional levels but with the following nonexertional limitations: the
> claimant is limited to the performance of simple, routine and repetitive tasks,
> undertaken in a work setting free of fast production rate or fast pace work, which
> setting imposes no more than occasional changes in the work routine, explained
> and/or demonstrated in advance of implementation, which setting requires no
> interaction with the public, and only occasional interaction with co-workers.

(R. at 28.)  In reaching this determination, the ALJ assigned "considerable weight" to the opinion

of Dr. Meyer, reasoning that Dr. Meyer's opinion was consistent with the evidence of record,

"which contained largely stable findings on mental status examinations, including average

intellectual function, fair reasoning, the ability to engage attention, linear through and

unremarkable social behavior."  (R. at 32.)  The ALJ, however, determined that Plaintiff's RFC

merited stronger limitations than Dr. Meyer opined, limiting his work to performance of

"simple" tasks instead of "simple-to-moderately complex" tasks, as Dr. Meyer opined Plaintiff

was capable of performing.  (R. at 32.)

The ALJ found that the record contradicted Dr. Lewis' opinion and therefore regarded

her opinion as "not valid."  (R. at 32.)  The ALJ reasoned that Dr. Lewis' report finding Plaintiff

---

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

was operating within the borderline range of intellectual function was "found nowhere else in the record and directly contradicted by the claimant's treating source." (*Id.*)[5] Furthermore, the ALJ held that Dr. Lewis based her limitations, in-part, on Plaintiff's psychosis, which lacked record support. (*Id.*) Considering Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ further found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 34.) She therefore concluded that Plaintiff had not been disabled under the Social Security Act. (*Id.*)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

---

[5] The ALJ cited treatment notes from Southeast stating "Plaintiff's intellect is average." (R. at 504.)

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In his Statement of Errors, Plaintiff argues that the ALJ's mental RFC was not based on substantial evidence and that the ALJ improperly evaluated Plaintiff's credibility.  (SOE at 6–20.)

### A.  The ALJ's RFC is supported by substantial evidence

Plaintiff argues that the ALJ erred in numerous ways in assessing Plaintiff's RFC and that as a result the RFC is not supported by substantial evidence.  His primary contention of error stems from the ALJ's evaluation of the opinions of Dr. Meyer and Dr. Lewis, which he argues was improper based on the ALJ's failure to recognize consistencies in the two examining doctors' opinions.  (SOE at 6.)  He further argues that the ALJ failed to include multiple mental health limitations within the RFC.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of

RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v.*

*Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When

considering the medical evidence and calculating the RFC, "ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings." *Simpson v.*

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set

forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must
> also explain how any material inconsistencies or ambiguities in the evidence in
> the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Additionally, the ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical

opinions as "statements from physicians . . . that reflect judgments about the nature and severity

of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do

despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). An

ALJ "must explain in the decision the weight given the opinions of a State Agency medical . . . consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii), but need not give "an exhaustive factor-by-factor analysis" of his decision. *Cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted).

The Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)

## 1. The ALJ properly explained her consideration of the examining consultant's opinions

Plaintiff contends that the ALJ erred in assessing his RFC because she found Dr. Lewis' opinion invalid, while considering Dr. Meyer's opinion with "considerable weight." He argues that Dr. Lewis' and Dr. Meyer's opinions are consistent, and therefore, "the ALJ created a material inconsistency with her failure to explain why these consistent opinions received drastically different weights." (SOE at 6, 9.)

While An ALJ "must explain in the decision the weight given the opinions of a State Agency medical . . . consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii), she is not required to give "an exhaustive factor-by-factor analysis" of her decision. *Cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted). Rather, the ALJ must explain how evidence in the record supports the RFC determination. *Delgado v. Comm'r of Soc. Sec.*, Case No. 2002 WL 34302, at *4 (6th Cir. March 4, 2002); *Newton v. Sec'y of HHS*, Case No. 91-cv-6474, 1992 WL 162557, at *2 (6th Cir. July 13, 1992) (the ALJ "need not respond in his decision to every item raised, but need only write to support [his] decision.").

As an initial matter, while Dr. Lewis' and Dr. Meyer's opinions overlap in restricting similar work-related activities, the opinions differ in the level of limitations each doctor deemed necessary. As such, their opinions are not as consistent as Plaintiff suggests such that the ALJ erred in assigning various weights. For example, Dr. Meyer opined that Plaintiff "potential[ly]" needed additional supervision or guidance (R. at 271), while Dr. Lewis opined to a higher level of limitation, finding Plaintiff was "markedly" limited in his ability to sustain an ordinary routine without special supervision. (R. at 394.) Dr. Lewis further found Plaintiff was operating within the borderline range of intellectual functioning, which directly contradicts treatment notes that describe Plaintiff's intelligence as average. (R. at 504.)

Alternatively, even if the ALJ should have given Dr. Lewis' opinion more weight, Plaintiff fails to show that such error was harmful. Plaintiff points to no record evidence supporting greater limitations for social interactions than the ALJ included in the RFC. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhard*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). Plaintiff fails to point to any evidence suggesting that had the ALJ allocated Dr. Lewis' opinion more weight, Plaintiff's RFC would have been more limited. Instead, Plaintiff focuses on the "inconsistency" he alleges the ALJ created. Because Plaintiff

cannot demonstrate that assigning different weights to the consultants' opinions would result in an alternative outcome regarding Plaintiff's RFC, the Undersigned finds that any error in weighing Dr. Lewis' opinion is harmless.

Here, as discussed above, the ALJ discussed Dr. Lewis' and Dr. Meyer's opinions, medical and other evidence on the disputed issues, and explained the basis for her determination of Plaintiff's RFC. Accordingly, the Undersigned finds that Plaintiff's argument lacks merit.

### 2. The ALJ properly included relevant medical health limitations in the RFC

Plaintiff further argues that the ALJ erred in assessing his RFC by failing to incorporate all limitations identified by Dr. Meyer, including the need for additional supervision and guidance, limitations to interactions with supervisors and coworkers, and problems with decision-making.

Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations that he found credible. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). A review of the formulated RFC and Dr. Meyer's recommended limitations reveal that the ALJ properly incorporated all of the disputed limitations into the RFC.

First, the RFC specifically recognizes Plaintiff's need for additional supervision and guidance, by limiting Plaintiff to working in a setting that "imposes no more than occasional changes in the work routine, explained and/or demonstrated in advance of implementation." Dr. Meyer's opined that Plaintiff could perform simple and moderately complex routine work with

training and supervision "if needed." (R. at 271.) Dr. Meyer also stated that Plaintiff would need assistance "at times" for new tasks and assistance "as needed" for routine changes. (R. at 272.) Plaintiff fails to explain how these limitations fail to follow Dr. Meyer's opinion, short of incorporating Dr. Meyer's opinion word-for-word.

Second, the RFC limits Plaintiff's interactions with others in accordance with Dr. Meyer's opinion. Under the RFC, Plaintiff is limited to a work setting that "requires no interaction with the public, and only occasional interaction with co-workers." Dr. Meyer opined that Plaintiff is "expected to be able to perform only in a nonpublic setting, with at most intermittent/occasional interactions with supervisors and some coworkers." (R. at 271.) Again, Plaintiff attempts to find fault in the RFC because the ALJ did not follow word-for-word Dr. Meyer's opinion. Specifically, Plaintiff argues that the ALJ erred by limiting Plaintiff to "occasional interaction with co-workers" as opposed to occasional interaction with **some** coworkers. He posits that through use of the modifier "some," Dr. Meyer intended to limit Plaintiff to working with a small number of coworkers. The Undersigned disagrees. Nothing in Dr. Meyer's opinion indicates that Plaintiff has issues with others based on group size, rather, his report indicated general disdain towards other people. (R. at 270 ("People are looking at me wrong or too close. People are a threat."). Moreover, as the ALJ discussed, although Plaintiff "likes to be alone'; he is able to come out when he needs," taking public transportation, shopping, and attending appointments. (R. at 27.) This determination is supported by substantial evidence. *See Westover v. Astrue*, 4:11-cv-816-Y, 2012 WL 6553102, at * 8 (N.D. Tex. Nov. 16, 2012) adopted by 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012) ("While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found

severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into . . . the RFC determination.") (quoting *Patterson v. Astrue*, No. 1:08-cv-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009)).

Finally, Plaintiff contends that the RFC does not account for Plaintiff's problems in making decisions. (SOE at 11.) Dr. Meyer opined that Plaintiff "has problems making decisions" and that "[h]e is expected to be able to perform in a low stress work setting, with assistance available as needed at times of change in routine, and ongoing medication/treatment compliance." (R. at 272.) The ALJ, therefore, limited Plaintiff to work that would require no decision making, low stress, and could accommodate any change in routine with extra assistance. Specifically, the ALJ limited Plaintiff "to the performance of simple, routine and repetitive tasks, undertaken in a work setting free of fast production rate or fast pace work, which setting imposes no more than occasional changes in work routine, explained and/or demonstrated in advance of implementation." (R. at 28.) Accordingly, because the ALJ adequately accounted for Plaintiff's limitations in decision making, the RFC is supported by substantial evidence.

## B. The ALJ properly assessed Plaintiff's credibility

Plaintiff next posits that the ALJ failed to portray the record as a whole and alleges instead she framed the evidence in favor of her RFC. (SOE at 13.) He takes issue with the ALJ's use of certain evidence which she determined cast doubt on Plaintiff's credibility. The undersigned finds no fault in the ALJ's use of record evidence or her assessment of Plaintiff's credibility.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F.

App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could

reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Pursuant to SSR 16-3p, the ALJ must evaluate seven factors in determining credibility:

> In addition to using all the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416(c)(3). These factors include:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of pain other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2016 WL 1119029 (March 16, 2016).

SSR 16-3p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v. Berryhill*, Case No. 5:16-cv-01942, 2017 WL 29125, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248).

1. **The ALJ properly considered Plaintiff's lack of work history and evidence of hallucinations**

Plaintiff argues that the ALJ improperly considered Plaintiff's work history and evidence from a treating source in assessing Plaintiff's subjective complaints. The Undersigned finds that the Plaintiff's argument lacks merit.

The ALJ reasonably considered the fact that Plaintiff had no work history to question his motives in applying for benefits.[6] *See e.g.*, *Watts v. Comm'r of Soc. Sec.*, 1:16-cv-319, 2017 WL 430733, at *10 (S.D. Ohio Jan. 31, 2017) *R&R adopted by* 2017 WL 680538 (S.D. Ohio Feb. 21, 2017) (holding the ALJ's credibility determination was supported by substantial evidence where the ALJ considered testimony regarding plaintiff's "lack of motivation" demonstrated by her "poor work history."); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability."); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (finding ALJ properly considered a claimant's poor work history when evaluating credibility and noting a poor work history may indicate an unwillingness to work depending on the circumstances). Consideration of Plaintiff's work experience, or lack thereof, was not therefore, as Plaintiff contends, "nothing more than an attempt to frame the evidence in favor of her residual functional capacity."

Nor was the ALJ's consideration of Plaintiff's medical records when assessing his credibility. *Cook v. Comm'r of Soc. Sec.*, 1:15-cv-592, 2016 WL 3944757, at *7 (S.D. Ohio June 29, 2016) *R&R adopted by* 2016 WL 3945695 (S.D. Ohio July 19, 2016) ("Thus, it is proper for

---

[6] Plaintiff argues that the ALJ's consideration of his work history set him up to fail, claiming, "[h]ad Mr. Thompson reported that he had been looking for a job the ALJ would have questioned whether Mr. Thompson's impairments were as severe as alleged." (SOE at 13.) Plaintiff's speculative argument does not undermine the validity of the ALJ's analysis in the instant case. " *See Eversole v. Comm'r of Soc. Sec.*, No. 1:12-cv-592, 2013 WL 2948328, at *3 (S.D. Ohio June 14, 2013) (holding that "[w]hile Plaintiff's insight and judgment may not be good, Plaintiff's speculative argument does not undermine the validity of the ALJ's analysis.").

an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.") (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).   In particular, the ALJ noted,

> [t]he record includes statements by doctors suggesting the claimant was engaging in possible misrepresentation.  A treating source noted that the claimant reported hallucinations, but does not appear to be responding to internal stimuli, and that he was not acting out, but generally only did so with staff members unfamiliar with him (B2F/1).  Another treating source likewise noted that the claimant did not appear to be responding to internal stimuli, despite his reported hallucinations, and related the reliability of his reporting "questionable" (B3F/5).

(R. at 31.)  Plaintiff argues that his mental impairments could account for his behavior, including his lack of work history.  Nevertheless, even if Plaintiff presented more than a speculative argument here, the Undersigned defers to the ALJ's assessment because it is supported by substantial evidence.[7]  "[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Accordingly, the Undersigned finds that the ALJ did not err in considering Plaintiff's work history and medical evidence to reach a credibility determination.

### 2.  The ALJ properly considered Plaintiff's daily activities in assessing his credibility

Plaintiff also argues that the ALJ erred in assessing his credibility because she "relied too heavily on Mr. Thompson's daily activities."  Plaintiff repeatedly argues in a conclusive fashion

---

[7] Plaintiff further cites his global assessment of function ("GAF") scores as evidence of his serious mental health symptoms.  In her decision, the ALJ addressed Plaintiff's GAF scores, noting that the range in the scores was large, and found that such a disparity combined with the "scarcity of issuance" rendered the scores "of highly dubious value."  (R. at 30.)  A GAF score is not dispositive of whether or not a claimant can work.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (holding that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC . . . does not make the RFC inaccurate.").

that the ALJ failed to consider "other relevant factors," without explaining what other factors the ALJ failed to recognize. (SOE at 18, 19.) Instead, he broadly argues that the ALJ did not consider Plaintiff's activities "in light of the entire record," narrowing in on the ALJ's finding that Plaintiff had the ability to attend to his personal needs, maintain a household and manage his finances. The Undersigned finds that the ALJ properly assessed Plaintiff's activities of daily living to determine Plaintiff's activities, although limited, were beyond what he claimed he was capable of handling. *See Hensley v. Comm'r Soc. Sec.*, Case No. 1:15-cv-11, 2017 WL 1055152, at *5 (S.D. Ohio March 21, 2017) (finding ALJ properly evaluates plaintiff's daily activities in assessing credibility).

Plaintiff asserts that the ALJ's review of his ability to attend to his personal needs, maintain a household, and manage his own finances when examined in light of the entire record are insufficient to discount his credibility. Plaintiff points to Dr. Meyer's notes, from a time when Plaintiff was homeless, which describe him as "disheveled, with an odor and visibly dirty hands and nails" to question whether he can actually attend to his own personal needs. (SOE at 17.) The ALJ, however, acknowledged that Plaintiff was initially homeless, "spending all of his day in the park, and unable to attend to routine hygiene and grooming." (R. at 27.) Nevertheless, since obtaining housing, the ALJ explained that Plaintiff reported he has been able to maintain an independent household, including cooking, cleaning, shopping, managing finances, and using public transportation. (R. at 27, 31.) The ALJ reasonably considered Plaintiff's reported activities. *See Warner*, 375 F.3d at 392 (ALJ "justifiably considered Warner's ability to conduct daily life activities" in the face of his claims of disability); *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may "consider household and social activities" in evaluating a claimant's subjective claims.).

Accordingly, Plaintiff's daily activities taken together with his work history and medical records provide sufficient basis to support the ALJ's determination that Plaintiff was not as functionally impaired as alleged.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 11, 2017

     /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE